We'll move now to case number four, United States v. Samuel Yarber. Case 18-1469. We'll begin with Ms. Pollack. Thank you, Your Honors. May it please the Court and Ms. Boyle. Elizabeth So, I think there's a lot of principles in this case that are pretty clearly established. Everybody agrees that your home is a sacred place. Everybody agrees that in order to get into your home, law enforcement must have probable cause that is approved by a neutral magistrate judge. And that is the issue here, is what is lacking in the search warrant in this case. There are a few established principles. Yes, judges can assume that drug dealers keep evidence of their drug dealing activities in their homes. Most often, in a search warrant, that is information given to the judge by the affiant, which says, I am an expert. I've done all these investigations. Here are the reasons why I believe that there will be drugs found in this home. None of that is present in this case. And what we have here, and the way that the government argues it, is that basically there's no nexus requirement anymore. There doesn't need to be is that you can see somebody conducting a drug deal on a street corner, they have a home, they drive to their home, search warrant. If you have a confidential informant who's reliable, that says, I've bought crack cocaine from this guy 15 times, and then you observe him and he goes home, search warrant. That's not what the law says. The law says there has to be a nexus between the drug activities and the home in order to get into the home with a search warrant. The ability to search a person, now, nobody's arguing that they didn't have probable cause to arrest Mr. Yarber, or search his person. What they needed probable cause for was to link his activities to his residence, and they didn't have it. If you read the affidavit as a whole, the four corners of the affidavit, what it says, they never once observed him leaving 2009 Moreland Boulevard before conducting a deal. They saw him leaving another residence, the warrant for that place, we have not challenged. They saw him park at home, but they never saw him get drugs from a place and drive to a deal and deliver them. Ms. Polk, in your statements, you're alluding to something that I have a little bit of a concern with here. That is, when you read the warrant application, I can't even figure out where he lives. Now, I know where he lives based upon the affidavit that he submitted. Mary says he lives at that apartment on Moreland Boulevard. Correct. Okay. But we also know, there's not much in the record on this, but there was a search warrant that was executed at the Perkins Road address in Urbana, what, simultaneously? Around the same time, yes. And does the record show whether the same judge approved that search warrant? It was the same warrant. The warrant is the same. It's the same thing? It is. If you look at the cover page of the warrant, which is attached to the memorandum in support of the motion to quash, it's the same facts for each warrant. And yes, same judge, same time. So there's no difference in the affidavits at all. They're exactly the same. Does that make sense? Well, I mean, I totally understand what you're saying. I don't see that from the warrant. But... So there's two warrants, but they're for the two different residences. One is Perkins Road, one is Moreland Boulevard, but there's nothing different. They're exactly the same. The underlying complaint, the underlying affidavit was the same. Correct. So it's the same affidavit. And if you look into further, the difference between the residences, and that's another thing that I think really distinguishes this case from some of the other cases that were referenced by the government, is usually you're just dealing with one house, right? This is two houses. So you have him staying with a girlfriend at 2030 Perkins Road, which is in fact what he was doing, and distributing drugs potentially from that location, because as they were following him, they saw him leave Perkins Road twice, and they saw him go back there once. So in the same vein that a police officer can say a drug dealer, in my expert opinion, keeps evidence of their activities in their residence, an expert could also say that drug dealers often have stash houses with extra girlfriends where they stash their stuff. So here's why I raise this, okay? I totally understand why the government is relying upon our case law that says we can infer that people keep drugs at the place where they live. The predicate of that though needs to be within the four corners of the warrant application. In other words, to get the benefit of that case law, don't you need to put in front of the magistrate judge where does the individual live? That's part of my point. You can't tell where he lives, and until after the warrants were filed, executed, and challenged, he did that so he could assert his privacy interest in the apartment so that he could proceed with the hearing. But the point being that there's no evidence in this affidavit of where he actually lives. It says that the charger belongs to this woman who he had a relationship with. He's also in a relationship with the woman at 2030 Perkins Road. There's no real indication of where the drugs are stored or located except for the fact that nobody ever saw him leave the Moreland Boulevard address. So if you're being common sense about this, if you call somebody and say, I'd like to make a drug deal with you, and you're following him, and he appears at the gas station, does the drug deal, having come from 2030 Perkins Road, the inference is that's where the drugs are because he left with the drugs to go make the deal. Okay, but you got to address the flip side of it though too, and that is that at least on two occasions, he drove to Moreland. Right, after the deals were made, which meant they're potentially, so maybe there's money there. With cash in his pocket. But in his pocket or his car. Why is it in the house? There's nothing in the house. All these cases that the government cites, even what they cite in their response brief, the Redrick case. So they say judges can infer that drug dealing proceeds are in a home. Well, guess what else? In that case, the confidential informant saw him in the house with tons of drugs. That's your circumstantial evidence that the house is related to the drugs. In the Wiley case that they cited, yes, you can infer that there's drug dealing proceeds at a house. Guess what else? They saw him cooking crack in that house. So there's always some nexus, some ability for them to say, yeah, there's a connection between the drug activity and this residence. Either they saw the drugs in the house, or they observed them, or they have a CI that saw them, or they saw him leaving that house with drugs prior. There's all of these facts. There's a universe of facts that could potentially link somebody's drug behavior to a residence. None of that is present in this case. You mentioned his car, the Dodge Charger, I guess. Correct. All these sales actually took place in that car. Or a gas station. Okay. With the car. Right. The car that was also parked at the Perkins Road address, and another car that was also parked at the Perkins Road address. Are there two cars that he's transacting out of? He transacted out of the car, I think, twice, and out of the gas station twice. We're getting to the gas station. They didn't live there. Correct. This car seems to be a pretty strong instrument of the affidavit, and where the car is. It's parked in front of this house. Both houses. Yeah. I guess that's where he is. Wherever the car is, is where he is. Correct. Then where he is, all the transactions seem to take place in the car. Or he drove the car to get there, yes. Yeah. I assume the judge counted on that, looked at it, and thought that that was a good reason. You say, well, that's not a good reason to check out the house. Not good enough. Even that's where he goes. Okay. It's not good enough, because the cars, for example, in one of the cases I cited in my brief, and it is escaping me right now, but the car was where the drug deal took place, and the drug deal took place in the car in the driveway of his house. In that case, the fact that it happened in the car is pretty close. It's adjacent to the house. You can see he's bringing the drugs from the house into the car, doing the deal in the driveway, and going right back in the house. Just because a car is parked somewhere, if we take that logic, that the location of the car is sufficient, then we're going to reach absurd results. If you observe a drug deal and a guy gets in his car and drives to an apartment, then that's it. You can get in the apartment. No problem. Their search warrants could be raining down from the clouds if this is our reasoning. What would they need to do? Stop him coming out of the house and then searching him? They could do that, or they could have a confidential informant actually do a deal in the house, or they could actually sit at the place where they think the drugs are and watch this guy a lot, for weeks, at multiple locations. They never once were able to link the origination of the drugs to that apartment on Moreland Boulevard. They did link it to Perkins Road, but we're not challenging that search. We're challenging the search of the Moreland apartment. They never once linked it to that house. I see I'm in rebuttal time. May I reserve, please? You may. Thank you. Thank you, Ms. Pollack. We'll now hear from Ms. Boyle. Thank you, Your Honors. Good morning. May it please the Court, my name is Katherine Boyle on behalf of the United States. In this case, the District Court correctly concluded that the affidavit supporting the search warrant for Samuel Yarbrough's apartment contained sufficient probable cause. In the alternative, the District Court correctly concluded the good faith exception to the Fourth Amendment exclusionary rule applied. Mr. Yarbrough argues that the affidavit did not show a nexus between the drug transactions he conducted and the residence on Moreland Boulevard that was searched. That is simply not the case. Your Honors, the United States is not arguing here that there is no nexus requirement. We're arguing the requirement was met. This Court reviews the District Court judge's opinion in these cases de novo, but gives great deference to the conclusion of the judge who initially issued the warrant. That judge's task in this case was to determine, based on the affidavit, whether there was a fair probability that the items to be seized listed in the warrant would be found at the Moreland Boulevard apartment. In this case, there certainly was. The affidavit was based in part on four controlled substance transactions between Mr. Yarbrough and a confidential source whom law enforcement had used multiple times before and multiple connections, in particular to the Moreland Boulevard apartment, because Mr. Yarbrough went to that apartment after two of the transactions. To get into more detail, prior to the buys, the confidential source provided information to law enforcement regarding his multiple past transactions with Mr. Yarbrough, including the phone number he used, the fact that he used a white Dodge Charger, and that car's license plate number, and a physical description of Mr. Yarbrough. He also positively identified a photograph of Mr. Yarbrough. The confidential source then conducted the four controlled buys of crack cocaine for Mr. Yarbrough in the four weeks prior to the submission of the warrant application. The affidavit stated that on each of these occasions, Mr. Yarbrough used the Dodge Charger and the phone number identified by the confidential source. Three of the buys actually took place in that vehicle, and one of the buys took place right nearby and inside of a gas station. Following the third and fourth buy, which were audio and video recorded, Mr. Yarbrough went straight to the Moreland Boulevard apartment that was the subject of the warrant. On one of these occasions, he was actually seen entering that apartment. This is important in part because one of the items to be seized listed in the warrant was drug proceeds. So here you have Mr. Yarbrough, directly after receiving money from a drug sale, going to Moreland Boulevard apartment on two occasions. And that's not the only ties to the Moreland Boulevard apartment identified in the affidavit. The Moreland Boulevard apartment was rented in the name of Mr. Yarbrough's girlfriend, Janae Hickman. Ms. Hickman was also the owner of the Dodge Charger that Mr. Yarbrough repeatedly used during drug transactions. The law enforcement officers who signed the affidavit stated that in his experience with investigating drug crimes, drug dealers frequently possess and use vehicles that are not registered to them. The affidavit also stated that during additional surveillance in the prior three weeks, on the three occasions law enforcement went to the Moreland Boulevard apartment, they saw the white Dodge Charger there on each occasion. And on one of those occasions, Mr. Yarbrough was seen again getting out of it and entering the apartment. Mr. Yarbrough attempts to make much of the fact that the affidavit did not say drug dealers generally keep drug proceeds in their home. But this court has held that judges may make reasonable inferences about where evidence is likely to be kept. And in the case of drug dealers, evidence is likely to be kept where they live. Okay, let's talk about that, okay? One of the things that in the red brief that said at least three times is that Yarbrough resided at 2009 Moreland Boulevard. That's not in the search warrant affidavit. Or if, let me, I could ask in the form of question, can you point me to where it's at? Your Honor, I think a reasonable inference can be made in light of the number of times the car was seen at the apartment on each occasion law enforcement surveilled the apartment. The fact that Mr. Yarbrough went back there, the fact that he was in a relationship with the woman who lived in the apartment. Let's just talk about what's in the, talk about what's within the four corners of the affidavit. Yes, Your Honor, and all of those facts that I've just mentioned are in the four corners of the affidavit. And I think from those facts, it is fair for the judge to make a reasonable inference that that is the place that Mr. Yarbrough lives. And acknowledging that he also has ties to the Perkins residence, as you noted earlier, Your Honor. It is not, it is certainly possible here that Mr. Yarbrough resided at both residences. It is not uncommon for a drug dealer to potentially live at and use more than one in terms of the material the search warrant is looking for inside that Moreland Boulevard. Is it the one transaction in which he immediately went to that house, part of that transaction would have been proceeds and the search warrant's looking for proceeds? Yes, Your Honor, that's part of it. Although actually Mr. Yarbrough went to that apartment on two occasions, after the third and fourth controlled by. And on each occasion, because the search warrant lists proceeds as an law enforcement, to go to assume that, not to assume, to believe that proceeds from the drug transactions would be in that apartment. Because Mr. Yarbrough went there immediately after these drug deals with presumably the proceeds of the drug deals. Are the proceeds marked or are the bills of certain denominations, how would that be tracked or do you know? Your Honor, generally in these types of deals with this agency, the proceeds would have been marked, yes. Would have been marked. Paragraph seven of the affidavit says, Yarbrough was observed exiting, here's the important point, his residence at 2030 Perkins Road. Yes, Your Honor. I don't think that that's inconsistent with the fact that Mr. Yarbrough maintained two residences in this case. No, I agree with you. That may be right, but doesn't that have to be within the affidavit for you to get the legal benefit of cases like Anderson? So you're asking us to draw an inference that our law supports that drug dealers keep drugs in their homes. Okay, fine. But doesn't the affidavit have to tell the issuing judge, the place we want to search is the place the guy lives? Well, Your Honor, first of all, I think the facts presented in the affidavit do show... to Moreland Boulevard. No, you're absolutely right about that. I'm focused on the narrow residence point. Yes, Your Honor, I understand. And what I would say is I think they show not only a connection, but I think they show a fair probability, in fact, more than a fair probability that Mr. Yarbrough actually does spend at least part of his time residing at the Moreland Boulevard apartment. While it may not directly say Mr. Yarbrough resides at the Moreland Boulevard apartment, I think in light of the other facts listed in the affidavit, the fact that his girlfriend lives there, the fact that he's observed on occasions even outside these drug transactions going there, the fact that the car he seems to exclusively use repeatedly for these drug transactions is there, I think all of that very clearly shows that that is a residence for Mr. Yarbrough. Additionally, I think in light of all the facts presented in the affidavit, the judge was certainly reasonable in deciding there was a fair probability that the items listed to be seized in the search warrant, including drug proceeds, would be found at the Moreland Boulevard apartment. But also, at a minimum, the Leanne Goodfaith exception applies here. The officers in this case relied in good faith on an issuing judge's determination of probable cause. The decision to obtain a warrant is prima facie evidence of good faith. The affidavit in this case just simply was not so plainly deficient that it would have put a reasonably well-trained officer on notice that it failed to establish probable cause, and in this case I believe based on the facts I've discussed with you already, Mr. Yarbrough cannot rebut the presumption of good faith. If your honors have no further questions, I'll address some arguments in that brief. Thank you. Thank you, Ms. Boyle. Ms. Pollack, rebuttal. Just to address your honor's last question, this currency was not marked. There's nothing in the affidavit to indicate it was marked. I did the trial in this case. I have no recollection of anybody saying the currency was marked or recovered from that residence, so as far as we can assume for the purposes of argument today, it was not marked and would have been untraceable once they got into that residence. To follow up on another question that was asked in terms of which residence does he live at, since the warrant does not specifically state which residence he lives at or that he lives at multiple residences... Hold on, why are you saying that? Why are you giving that point away? What? The warrant doesn't state where he lives. It does. It says those in two places. No, no, no. It says it says his residence at 2030 Perkins Road in paragraph seven. So he lives at Perkins Road and sometimes stays at, maybe. Maybe that could be inferred, but so fine. I'm not giving it away. What I'm saying is that when you have multiple residences listed in a search warrant affidavit, you have to be able to say which one's which. Now, if the government is, their logic is to be continued, then anywhere his car is located or anybody who knows who lives there is a place where they could search. So if he visited his mother three times a week and had driven there after a drug deal, they get to search his mom's house. If he drives to a friend's apartment to hang out and sometime either before or after some drug transaction, they get to search the friend's house. I mean, they could have gotten, based on the allegations here, regardless, just based on the connection of the vehicle, they could have gotten warrants to search everywhere he ever stopped. And that's not what the Fourth Amendment is. That's not what you're allowed to do. That's not what he did either. That's irrelevant. So what? I mean, if the Fourth Amendment says you can't do it, then the result is the only way we get here is if somebody got convicted of something that they weren't supposed to get convicted of because they were wrongly, there was a wrongful search. But you're making a reductio ad absurdum argument. And the point is that this isn't the circumstances in all cases. It was just in these cases. That's correct. That's in this case. And compared to the other cases where this was an issue, most of these cases that were cited in everyone's briefs are, it's a single house. It's one apartment. And that's not what we have here. And so because of that, the search warrant was always comes up. It's a get out of jail free card for every police officer to do whatever they want as long as they go see a judge first. And at a certain point, you have to look at what the district court in this case called an extremely experienced officer with hundreds of drug investigations under his belt who should have known that he needed more to link this defendant to that residence before getting this search warrant. And the fact that a judge signed off on it doesn't fix the error. Yes, he might have gone to seek it. But everybody who looks at this should know that there is not enough to get into that house. And because of that, I mean, if we keep writing off police officers' decisions about this as good faith, good faith, good faith, good faith, and the Fourth Amendment is dead, it's not even there. So at what point does it become obvious enough that the warrant was insufficient enough based on this super cop and all of his experience that maybe, just maybe, this decision should get reversed? And that's what we're asking. Thank you, Ms. Pollack. Case will be taken under advisement.